UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Gina Louise Sinatra,

                           Plaintiff,

        v.

Carolyn W. Colvin,

                           Defendant.

**Decision and Order**

16-CV-917 HBS
(Consent)

## I. INTRODUCTION

The parties have consented to this Court's jurisdiction under 28 U.S.C. § 636(c). The Court has reviewed the Certified Administrative Record in this case (Dkt. No. 9), and familiarity is presumed. This case comes before the Court on cross-motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. Nos. 14, 16.) In short, plaintiff is challenging the final decision of the Commissioner of Social Security (the "Commissioner") that she was not entitled to Disability Insurance Benefits under Title II, or Supplemental Security Income under Title XVI, of the Social Security Act. The Court has deemed the motions submitted on papers under Rule 78(b).

## II. DISCUSSION

The ultimate issue to be determined by this Court is whether the ALJ's decision that plaintiff was not under a disability is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir.1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

For purposes of Social Security disability insurance benefits, a person is disabled when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

Plaintiff bears the initial burden of showing that her impairments prevent her from returning to her previous type of employment. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." *Id.*; *see also Dumas v. Schweiker*, 712 F.2d 1545, 1551 (2d Cir. 1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

To determine whether any plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing her past relevant work; and

(5) whether the impairment prevents the plaintiff from continuing her past relevant

2

work; and whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; *Berry, supra*, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, the ALJ has an affirmative duty to develop the record. *Gold v. Secretary*, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a plaintiff from performing her past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work that she has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). The ALJ must then determine the individual's ability to return to her past relevant work given her residual functional capacity. *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994).

Plaintiff argues that the Commissioner placed too much weight on the consultative psychiatric examination that Dr. Susan Santarpia, Ph.D., conducted on May 7, 2013. (Dkt. No. 9 at 237 (hereafter noted as [237]).) More specifically, plaintiff argues that Dr. Santarpia did not account for treatment records that detailed her abusive relations, self anxiety, and self-harming behavior. Dr. Santarpia, according to plaintiff, also did not review records suggesting that she should be limited to simple and low-contact work. The Commissioner responds that the Administrative Law Judge ("ALJ") who issued the unfavorable decision recognized what plaintiff mentioned to Dr. Santarpia about her history of abuse. The Commissioner argues further that Dr. Santarpia's assessment is consistent with other treatment notes in the record. On this point, the Court agrees. Dr. Santarpia found plaintiff to have fluent speech; coherent and goal-directed thought processes; and intact attention and memory skills. [239.] Dr. Santarpia, while estimating plaintiff to have "low average" cognitive functioning, also found her to be capable of activities of daily living and capable of

following and understanding simple directions and tasks. [239–240.] Records from Elmwood Health Center acknowledged plaintiff's psychiatric history but also noted that she "feels well with no complaints." [222.] *Cf. Britton v. Colvin*, No. 5:13-CV-00907, 2015 WL 1413382, at *14 (N.D.N.Y. Mar. 27, 2015) ("The opinions of consultative and State agency doctors . . . may constitute substantial evidence [if] supported by the medical evidence, which is the case here.") (citations omitted). These records assessed plaintiff's orientation, memory, and insight in a way that is not inconsistent with Dr. Santarpia's assessment. [231.] As late as May 2014, after the date last insured, the Elmwood Health Center records indicate a confidence in cognitive-behavioral types of treatment without any notation of disability. [253.] Finally, plaintiff is right to point out that the ALJ did not address Dr. Butensky's assessment of June 10, 2013 [58–59], but this assessment is not inconsistent with the available medical records. *Cf. Leisten v. Astrue*, No. 08-CV-6556 CJS, 2010 WL 1133246, at *10 (W.D.N.Y. Mar. 23, 2010) (harmless error where evidence not considered by ALJ did not cause significant limitations). According to Dr. Butensky, plaintiff "retains the capacity to perform simple and some complex job tasks, sustain attention/concentration for tasks; she has mild to moderate limitations in her ability to adapt to changes in a routine work setting, and interact appropriately with coworkers and supervisors." [58.] *Cf. Williams v. Comm'r*, No. 7:07-CV-908, 2010 WL 2401280, at *4 (N.D.N.Y. June 10, 2010) (no disability where medication partly controlled mood and examining doctors found no significant limitations); *Sullivan v. Astrue*, No. 08-CV-6355 CJS, 2009 WL 1347035, at *11 (W.D.N.Y. May 13, 2009) (same). None of the records suggested medically imposed exertional limits apart from plaintiff's usual abilities. *See Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983) ("The Secretary is entitled to rely not only on what the record says, but also on what it does not say."). Under these circumstances, substantial evidence supports the weight that the ALJ assigned to Dr. Santarpia's assessment.

Plaintiff next argues that the Commissioner failed to consider evidence from the relevant time period that would contradict the ALJ's findings. Specifically, plaintiff cites certain records from Elmwood Health Center that would have been generated in 2014. These records would have postdated plaintiff's date last insured; also, as mentioned above, records from Elmwood Health Center predating the date last insured support the findings that the ALJ made. *Cf. Tavarez v. Astrue*, No. 11-CV-2784 FB, 2012 WL 2860797, at *4 (E.D.N.Y. July 11, 2012) ("As the Appeals Council noted, the majority of the new evidence Tavarez submitted related to her condition after her 2004 date last insured, and therefore is not relevant to her claim."). Plaintiff also places heavy emphasis on a physical residual functional capacity questionnaire completed at Elmwood Health Center on November 6, 2015 for a treatment period beginning in October 2012. (Dkt. No. 14-3.) The questionnaire left blank several questions asking about any physical symptoms, clinical findings, and objective signs. (*Id.* at 2.) The first page contains a single conclusory sentence that plaintiff's "psychiatric conditions impede meaningful work; inability [sic] to engage socially." (*Id.*) The next two pages of the questionnaire feature some checkmarks, without explanation, about what some of plaintiff's exertional limitations might be. The last page of the questionnaire contains the following conclusory sentence: "Cannot engage socially; cannot cope with even minor stressful situations due to severe anxiety/depression." (*Id.* at 5.) This single questionnaire does not do enough to create a conflict in the records that the ALJ would need to resolve. *See Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("A treating physician's statement that the claimant is disabled cannot itself be determinative."); *Harrison v. Colvin*, No. 14-CV-604S, 2015 WL 5567534, at *4 (W.D.N.Y. Sept. 22, 2015) ("Although the new evidence Plaintiff submitted to the Appeals Council includes a RFC questionnaire which expressly inquired as to Plaintiff's specific limitations, including her ability to sit

5

and stand, Dr. Hart declined to answer any specific question, choosing instead to again write only 'permanently total disabled' without further comment.").

**III.     CONCLUSION**

The Commissioner's final determination was supported by substantial evidence. For the above reasons and for the reasons stated in the Commissioner's briefing, the Court grants the Commissioner's motion (Dkt. No. 16) and denies plaintiff's cross-motion (Dkt. No. 14).

The Clerk of the Court is directed to close the case.

SO ORDERED.

                                       _/s Hugh B. Scott_
                                       Hon. Hugh B. Scott
                                       United States Magistrate Judge

DATED: September 28, 2018